# HARRY B. CAMPBELL v. CANADIAN NORTHERN RAILWAY COMPANY and Another.[1]

### January 2, 1914.

### Nos. 18,459—(156).

**Negligence of defendant conceded.**

1. Defendant, a railroad company, *held* precluded by its concessions on the trial from contending the court erred in charging it with negligence as a matter of law if it left a switch open, whereby plaintiff, an employee of its codefendant, was injured.

**Concurring negligence.**

2. Defendant, over whose track the train was being operated by another company under a traffic arrangement with the latter's own crew, could not escape liability on the theory that the accident was due to the neglect of

[1] Reported in 144 N. W. 772.

Note.—As to the liability to servants where two or more railway companies use same tracks or station grounds, see note in 46 L.R.A. 102. And upon the liability of lessor of railroad for injuries caused by negligence of another company using the road under a lease, license, or other contract, see note in 44 L.R.A. 737.

On the question of the liability of a railroad company for injury to one riding on train run over its tracks by another company under license, through negligence of the licensee, see note in 36 L.R.A. (N.S.) 887.

one of plaintiff's fellow servants to keep a proper lookout, the case thus presented being merely one in which the latter's negligence concurred with that of defendant in producing the result complained of.

**Evidence conclusive.**

3. Under the rule that the positive testimony of an unimpeached witness cannot be disregarded, except for inherent improbability of the facts and circumstances disclosed, evidence *held* conclusive that compliance by the other company and its crew with the Federal act, requiring a certain proportion of the air on the train to be connected, would not have prevented the accident.

**Defendant liable for codefendant's negligence.**

4. As to such other company the track on which its crew was operating the train was "its," within the provisions of the Federal Employer's Liability Act, though owned by its codefendant, and under the doctrine of Floody v. Chicago, St. P. M. & O. Ry. Co. 109 Minn. 228, it was responsible for its codefendant's negligence in leaving the switch open or unlocked.

**Failure to submit question to jury.**

5. Defendant, not having, in its requests, referred to assumption of risk of an unlighted switch, *held* not entitled to complain of the trial court's failure to submit such question.

**Damages not excessive.**

6. Verdict *held* not excessive on the record properly before this court, but leave granted to apply to the trial court on evidence discovered since the trial for reconsideration thereof only.

Action in the district court for Ramsey county to recover $20,000 for personal injuries received while in the employ of defendant Canadian company. The answer of the Canadian company alleged that under the laws of the state of North Dakota, in which state the derailment occurred, the servant or employee of the Northern Pacific Railway Co., whose duty it was to line up the switch on the passing track properly, was not a servant of the answering defendant, and that defendant was in no way responsible for any acts or omissions on the part of any employee of the Northern Pacific Railway Co. in respect thereto; that the North Dakota law was "that in order to establish the relationship of master and servant within the rule making the former liable for the latter's acts, the master must have

the right and power to hire the servant, to direct and control his acts, and to discharge and compel him to leave his employment and premises."

The case was tried before Brill, J., and a jury which returned a verdict against both defendants for $16,500. From an order denying the motion of defendant Canadian Northern Railway Co. for judgment notwithstanding the verdict or for a new trial, it appealed. From an order denying the motion of defendant Northern Pacific Railway Co. for a new trial, in case plaintiff consented to a reduction of the verdict to $12,000, it appealed. Affirmed.

*C. W. Bunn, George Hoke, Hector Baxter* and *H. Christopher,* for appellants.

*Barton & Kay,* for respondent.

Philip E. Brown, J.

Action to recover damages for personal injuries, with verdict for plaintiff for $16,500 against both defendants, subsequently reduced to $12,000. The Canadian Northern appealed from an order denying its motion for judgment or a new trial, and the Northern Pacific from one denying the latter relief.

The first-named company operated a railroad in Canada, southerly to our boundary, connecting there with one of its codefendant's lines in North Dakota, the two companies having a traffic arrangement whereby each delivered its cars to the other with its own crews. On the night of June 17, 1912, plaintiff, an engineer of the former, proceeded, under its orders and pursuant to the traffic arrangement mentioned, to take a train from its tracks in Canada to those of its codefendant in North Dakota, his duties requiring him to leave it on the latter's passing track, with which another of its tracks, designated as the "round-house track," connected; but when, shortly after midnight, he reached the switch at the juncture of the two tracks it was open, his engine was derailed, and he was injured.

Plaintiff claimed his injuries were caused by the Northern Pacific's negligence in leaving the switch open, or else in failing to have it locked after use; furthermore, that its codefendant was responsible for failure of duty in either of these regards. The negligence claims

were both submitted, the court charging that if the jury found an employee of the Northern Pacific failed to close the switch after its last use thereof before plaintiff brought his train on the passing track, such would constitute negligence on its part for which its codefendant would also be chargeable; further that, if the duty devolved on the Northern Pacific to keep the switch locked and it failed in this regard, this would likewise constitute negligence as to both defendants. Plaintiff's contributory negligence was submitted, but other defenses which will be referred to later were not.

1. The Northern Pacific now contends the court erred in charging it with negligence as a matter of law if it left the switch open. This defendant, however, foreclosed itself from so urging by its attitude on the trial, having conceded several times that the switch should have been thrown back after use so as to line up the passing track. The trial court was justified in assuming absence of dispute on this point. No error resulted.

2. This defendant claims error in refusal to submit, in accordance with its request, the question whether the accident was proximately caused by failure of the Canadian Northern trainmen, plaintiff's coemployees, to keep proper lookout for the switch, insisting it fairly appears from the evidence that the train, when approaching the switch, was moving at the rate of two or three miles an hour and under control, meaning ability to stop within seeing distance. It also appeared that a fellow servant of plaintiff, whose duty it was to look out for and throw switches for the crew and who was familiar with the tracks, rode on the front foot-board of the engine, and, by means of the headlight, could have seen the state of the switch two or three car-lengths ahead of the engine; so that, by due observance on his part, the accident could easily have been prevented. The correctness of the premises may be assumed, but plaintiff is not connected therewith otherwise than as a fellow servant. At most they would present merely negligence on the part of the company, in leaving the switch open or unlocked, concurring with that of plaintiff's fellow servant in failing to keep proper lookout, and hence would not avail defendant. Swanson v. Oakes, 93 Minn. 404, 101 N. W. 949; Novak

v. Great Northern Ry. Co. supra, page 141, 144 N. W. 751; Gillespie v. Great Northern Ry. Co. supra, page 1, 144 N. W. 466.

3. The air brakes of the train were not connected and in working condition, as required by act of Congress and order of the Interstate Commerce Commission. Compliance therewith, it is argued, would have avoided the accident, wherefore it was error to refuse a request to the effect that, if the jury so found, then the verdict must be for this defendant. It is not urged that there is any evidence tending to establish this claim, but that the jury might have reached the conclusion indicated, notwithstanding the diametrically opposite testimony given concerning this matter on plaintiff's part. The discretion of the jury in the matter of credibility does not, however, warrant the disregard of the positive testimony of an unimpeached witness, unless its improbability furnishes a reasonable ground for so doing, which must appear from the facts and circumstances disclosed by the evidence. As said in Second Nat. Bank of Winona v. Donald, 56 Minn. 491, 493, 58 N. W. 269:

"It cannot be arbitrarily disregarded by either court or jury, for reasons resting wholly in their own minds, and not based upon anything appearing on the trial."

See also Grover v. Bach, 82 Minn. 299, 84 N. W. 909. The case before us is within the rule, and, in addition to the fact that it was not plaintiff's duty to connect the air, we deem the evidence conclusive that compliance with the law with regard thereto would not have changed the result.

4. The Canadian Northern claims the Federal Employer's Liability Act[1] of April 22, 1908, covers the case as to both defendants, and contends its duty, which it concedes, to furnish plaintiff a safe place to work does not bring it within the provision of the act making a carrier engaged in commerce between the states and foreign countries liable for injuries resulting, in whole or in part, from negligence of any of its officers, agents, or employees, or from any defect or insufficiency, "due to its negligence," in its cars, appliances, track or other equipment. More specifically stated, the claim is that these

1 [35 St. 65, c. 149, U. S. Comp. St. Supp. 1911, p. 1322.]

provisions, and particularly the words quoted, conclusively indicate that this defendant cannot be held responsible for negligence of its codefendant, occurring on the latter's road, in leaving the switch open or unlocked, and that the owner of the road must here stand in the place of the master within the meaning of the statute. The argument advanced is that, as the act is in derogation of common law, it should receive strict construction as to liability thereby imposed; hence "its negligence" exempts the company from responsibility for negligence of another carrier on whose tracks its servants were employed, notwithstanding they were so engaged under its orders; in short, that rules of statutory construction require a holding directly contrary to the doctrine announced in Floody v. Chicago, St. P. M. &. O. Ry. Co. 109 Minn. 228, 123 N. W. 815, 134 Am. St. 771, 18 Ann. Cas. 274, declaring liability against a company similarly circumstanced in its relation to its employee.

The question raised is of Federal cognizance, and no supporting authority is cited. We are satisfied, however, that the statute should not be construed so strictly as to "defeat the obvious intention of Congress as found in the language actually used according to its true and obvious meaning." Fulgham v. Midland Valley R. Co. (C. C.) 167 Fed. 662. See also Johnson v. Southern Pacific Co. 196 U. S. 1, 25 Sup. Ct. 158, 49 L. ed. 363; Second Employers' Liability Cases, 223 U. S. 1, 51, 32 Sup. Ct. 169, 56 L. ed. 327; Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125. It would be unusual, if the intention was to make so radical a change in established principles, for Congress to leave such to be spelled out by doubtful construction. Under the proofs, therefore, we think that, as to this defendant, the passing track should be deemed to be "its" the same as if it were operating that part of the road under lease; and, in the absence of authority to the contrary, we construe the act in this regard in harmony with the Floody case, and hold defendant's contention untenable, save with respect to the applicability of the statute to both defendants, deeming it so applicable.

5. Error is assigned by this defendant because the court failed to refer in its charge to the facts, established by the evidence, that

no light was maintained on the switch, of which plaintiff was aware, having previously made many night deliveries on the passing track without the switch being lighted. It is urged in this connection that the jury might have found the accident was thus caused and, under the doctrine of assumption of risk, would have been justified in returning a verdict against plaintiff. But this defendant made no reference to assumption of risk in its requests. What is said therein concerning absence of a switch light refers exclusively to its claim of irresponsibility for its codefendant's negligence. Under these circumstances we cannot declare error.

6. Both defendants assail the reduced verdict as excessive. We cannot so hold on the record properly before us, though the recovery is large. Apparently the jury, and also the trial court, were influenced by evidence tending to establish a resulting incapacity on plaintiff's part further to serve as a railway engineer. However, shortly before the argument in this court, application was made here by defendants for leave to move the district court for a new trial on account of newly discovered evidence conflicting with this theory. The application was denied, with permission, if affirmance resulted, to apply to the lower court for further consideration, on the evidence presented and that newly discovered, whether the verdict is excessive.

Orders affirmed, with leave to defendants to make such application on the question of damages only.